**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SERVICE EMPLOYEES HEALTH & WELFARE TRUST FUND, MIKE GARCIA, Trustee, CHARLES GILCHRIST, Trustee, RAYMOND C. NANN, Trustee, LARRY T. SMITH, Trustee, | No. C 06-3078 CW |
| Plaintiffs, | ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT |
| v. | |
| ADVANCE BUILDING MAINTENANCE, | |
| Defendant. | |
| _____/ | |

Plaintiffs California Service Employees Health & Welfare Trust Fund (Trust) and trustees Mike Garcia, Charles Gilchrist, Raymond Nann and Larry Smith have filed motions for summary judgment and for leave to file a first amended complaint (FAC). Defendant Advance Building Maintenance (Advance) opposes the motions. The matters were heard on September 13, 2007. Having considered the parties' papers, the evidence cited therein and oral argument on the motions, the Court grants in part Plaintiffs' motion for summary judgment and denies it in part and grants Plaintiffs' motion for leave to file an amended complaint.

BACKGROUND

The Trust is a non-profit neutral third-party established to administer health and welfare benefits to members of various unions pursuant to collective bargaining agreements with employers including Advance. This dispute arises out of successive collective bargaining agreements (CBAs), also called Maintenance Contractors Agreements (MCAs), between Defendant and members of Local 1877 (previously Local 399) of the Service Employees International Union (SEIU). Stillwell Decl., Ex. A. Under the agreements, Defendant was required to make contributions to the Trust for health and welfare benefits for covered employees.

In 2003, the Trust retained the accounting firm Linquist LLP to audit Defendant's records for the period January 1, 1999 through December 31, 2002. Thiermann Decl. ¶ 2. According to Plaintiffs, Defendant breached its duties under the Employee Retirement Income Security Act (ERISA) by failing fully to respond to Lindquist's requests for information. Joseph Thiermann, a shareholder of Lindquist, declares that Defendant failed to respond to requests for additional information during the audit. Thiermann Decl. ¶ 5. According to Defendant, it was not aware that Lindquist needed additional information.

Lindquist provided Defendant with a draft report on October 3, 2003, stating that it found $800,251.98 in delinquent contributions. Although the parties dispute the nature and content of the communications that occurred following the draft report, it is clear that the final Lindquist report, provided to Defendant in April, 2004, asserted $347,394.49 in delinquent payments.

2

Plaintiffs sent an initial demand letter seeking $486,360.95 in delinquent payments, liquidated damages, interest and attorneys' fees on May 25, 2004.  On April 28, 2006 Plaintiffs sent another demand letter seeking $577,368.06.

On May 8, 2006, Plaintiffs filed the complaint in this case alleging unpaid contributions based on the Lindquist report, for delinquent contributions related to two trust accounts, Accounts #718 and #719, and for late contributions made for the period between August and December, 2003.  Plaintiffs originally alleged $327,394.49 in unpaid contributions based on the Lindquist report, $4,249.09 in unpaid contributions to Account #718 for the period February, 2000 through March, 2002 and $1,248.87 in unpaid contributions to Account #719 for the period February through April, 2003.

Because Advance concedes that it owes some of the amounts claimed and the Trust voluntarily dismisses some of its claims, the parties now disagree on (1) $30,271.42 in benefits for employees Advance argues were managers and therefore not covered by the CBA, (2) $4,249.09 in allegedly delinquent contributions for the period between February, 2000 and March, 2002 for Account #718, and (3) liquidated damages, interest and attorneys' fees for all of the allegedly unpaid or late contributions, whether they are contested or not.

DISCUSSION

I.   Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the

3

evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its

United States District Court
For the Northern District of California

4

**United States District Court**
For the Northern District of California

1    ultimate burden of persuasion at trial.

2    Id.

3        If the moving party discharges its burden by showing an

4    absence of evidence to support an essential element of a claim or

5    defense, it is not required to produce evidence showing the absence

6    of a material fact on such issues, or to support its motion with

7    evidence negating the non-moving party's claim.   Id.; see also

8    Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v.

9    NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the

10   moving party shows an absence of evidence to support the non-moving

11   party's case, the burden then shifts to the non-moving party to

12   produce "specific evidence, through affidavits or admissible

13   discovery material, to show that the dispute exists."   Bhan, 929

14   F.2d at 1409.

15       If the moving party discharges its burden by negating an

16   essential element of the non-moving party's claim or defense, it

17   must produce affirmative evidence of such negation.   Nissan, 210

18   F.3d at 1105.  If the moving party produces such evidence, the

19   burden then shifts to the non-moving party to produce specific

20   evidence to show that a dispute of material fact exists.   Id.

21       If the moving party does not meet its initial burden of

22   production by either method, the non-moving party is under no

23   obligation to offer any evidence in support of its opposition.   Id.

24   This is true even though the non-moving party bears the ultimate

25   burden of persuasion at trial.   Id. at 1107.

26       Where the moving party bears the burden of proof on an issue

27   at trial, it must, in order to discharge its burden of showing that

28                                    5

United States District Court
For the Northern District of California

no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. Id.; see also Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case. UA Local 343, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." Id. This standard does not change merely because resolution of the relevant issue is "highly fact specific." Id.

Plaintiffs argue that they are entitled to summary judgment on all of their claims.[1]

A.   Delinquent Payments

1.   Claims Based on the Lindquist Report

The majority of Plaintiffs' claims are based on delinquent payments identified in the April, 2004 Lindquist report. That report identified $347,394.49 in delinquent contributions. Of that amount, Defendant does not dispute that it owes $232,130.76. Further, Plaintiffs concede that they are not owed $84,992.31 of the contributions identified by Lindquist and voluntarily dismiss

---

[1]Advance argues that the Trust "seek[s] relief based on a single theory of liability, ERISA Section 515" and therefore the Trust's motion must either be granted in full or denied in full because "Judgment cannot be entered as to a portion of the contributions allegedly due." Opposition at 20-21. However, as the Trust points out, it asserts several distinct claims under a single statute. Therefore, partial summary judgment is appropriate as to any of the claims, even if it is denied on the others.

those claims.

Therefore, the Court grants Plaintiffs' motion for summary judgment with respect to the $232,130.76 of undisputed contributions identified in the Lindquist report.  The Court notes that in January through May, 2007, Defendant made monthly payments of $10,000 toward the $232,130.76 of uncontested delinquent payments identified in the Lindquist report.  McCulloch Decl. ¶ 16.

The remaining disputed amount of $30,271.42 based on the Lindquist report represents the benefits Plaintiffs allege were due for ten employees who Defendant argues were managers not entitled to benefits under the CBA.  Defendant further contends that, even if these employees are covered by the CBA despite their status as managers, there are triable questions of fact regarding whether benefits were due, because the CBA requires that an employee perform 110 hours of covered work per month to be entitled to benefits.

Defendant provides employment summaries for each of the ten employees, demonstrating that it classified them as "assistant district managers," "district managers," "building supervisors," "project managers" or "supervisors."  Mosieznicki Decl., Ex. B.  These summaries indicate that the ten employees each spent between ten and fifty percent of their time performing janitorial work and describe their other responsibilities.  Id.  These hours spent doing janitorial work are sufficient to rebut Defendant's first argument, that the employees are not covered by the CBA because it considered them to be managers.  As Plaintiffs note, the CBA specifically states,

> The employer recognizes the Union as the sole collective bargaining representative for all employees coming under the classifications of this Agreement <u>or performing the duties of those classifications</u>, and within the jurisdiction of the Union.

Chung Decl., Ex. F at 1; Ex. G at 2 (emphasis added).

Further, Plaintiffs counter that many of the non-janitorial tasks that these employees performed were in fact duties covered by the "cleaning foreperson" classification under the CBA. For example, the summaries indicate that the workers at issue spent the remainder of their time on tasks including "assign employees to their tasks," "check for time and attendance," "deliver janitorial paper supply," and "pick up timecards." <u>Id.</u> Plaintiffs provide the declaration of an individual who represented the Union in negotiations leading to the CBA at issue, stating that these tasks are typical of "cleaning forepersons" who have general duties including, "Organization and issuance of supplies, communicating cleaning specifications and/or special cleaning orders for the crew, inspection of work to insure its completion and submission of time sheets and reports to management." Stillwell Decl. ¶ 7. Defendant provides no contrary evidence regarding the duties of a "cleaning foreperson."

Although Defendant's summaries provide evidence that none of the ten employees performed 110 hours of janitorial work in any month, they do not provide evidence of the number of hours spent on other non-janitorial work covered by the CBA. Even if Defendant classifies these employees as "managers," their performance of tasks performed by "cleaning forepersons" can be counted toward the 110 hours required for benefit eligibility. As Defendant argues,

8

**United States District Court**
For the Northern District of California

it is not clear how many covered hours each of the ten employees performed.

However, under <u>Motion Picture Industry Pension & Health Plans v. N.T. Audio Visual Supply, Inc.</u>, 259 F.3d 1063 (9th Cir. 2001), <u>cert. denied</u>, 534 U.S. 1109 (2002), Defendant bears the burden of establishing that these employees have not worked sufficient hours to entitle them to benefits under the CBA.  In <u>Motion Picture</u>, the Ninth Circuit held that "once the Trustees show 1) that [the employer] failed to keep adequate records, and 2) that there exist some employees who (a) performed covered work that was (b) unreported to the trust funds, then the burden shifts to [the employer] to show the extent of the unreported covered work for those employees."  <u>Id.</u> at 1066.

Here, the records produced by Defendant indicate that the employees at issue performed some covered work, but they are not adequate to determine the number of hours of covered work performed.  Until Plaintiffs performed the audit, they were unaware that these employees performed covered work.  Therefore, the burden shifts to Defendant to prove that the employees spent fewer than 110 hours per month performing tasks covered by the CBA.  However, the only evidence that Defendant presents is a conclusory statement that "none of the ten supervisors at issue performed more than 110 hours of work in one of the listed categories in any month at issue."  Mosieznicki Decl. ¶ 18.  Although the declarant states that she "reviewed the employment files for each of the ten supervisors," she does not state that she has any personal knowledge of the activities of the employees, nor does she attach

9

United States District Court

For the Northern District of California

time sheets or other records to support her conclusion.  Id. at ¶ 3.

Defendant has not met its burden of establishing the extent of the covered work performed by the ten employees it claims are managers.  Therefore, the Court grants Plaintiffs' motion for summary judgment with respect to these workers.

2.    Claim Based on Account #718

Plaintiffs argue that they are entitled to summary judgment on a shortage of $3,000.17 in the contributions made to Trust Account #718 for the period February, 2000 through March, 2002.  Defendant does not dispute the evidence demonstrating the shortage, but argues only that this claim is barred by ERISA's four-year statute of limitations.  Defendant argues that Plaintiffs knew or had reason to know about the purported unpaid contributions at the time they were due.  Therefore, according to Defendant, the latest date on which these shortages could have been challenged was in March, 2006 and the claim included in the May, 2006 complaint is therefore time-barred.

However, Defendant provides no evidence or argument to support its assertion that Plaintiffs knew or should have known about the alleged underpayments at the time they accrued.  Defendant argues only that Plaintiffs did not discover these claims through the audit and cite an October, 2002 letter regarding the underpayments.  If Plaintiffs first became aware of the underpayments in October, 2002, their May, 2006 claim is not time-barred.

The Court grants Plaintiffs' motion for summary judgment with respect to the claim related to underpayment of Account #718.

10

3.   Liquidated Damages and Interest

In addition to the delinquent payments discussed above, Plaintiffs seek interest and liquidated damages related to those payments under Title 29 U.S.C. § 1132(g)(2) and the terms of the CBA.  Section 1132(g)(2) provides,

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan--
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i)   interest on the unpaid contributions, or
>     (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

The Trust Agreement provides for liquidated damages at the rate of twenty percent of the delinquent contributions where a lawsuit is filed to recover those contributions.  McCulloch Decl., Ex. B at 16.  Plaintiffs therefore request liquidated damages of $52,480.44 in relation to their claim based on the Lindquist report and $1,004.58 in relation to their claim based on Account #718.[2]  Defendant does not contest the request for liquidated damages and

---

[2]Plaintiffs originally sought underpayments of $262,402.20 related to the Lindquist Report and $5,022.90 related to Account #718.  Defendant has conceded that it owed, and paid, some portion of both of these claims.  These calculations are based on the full amount originally sought because Advance did not concede or pay any amount prior to the filing of the complaint.

United States District Court
For the Northern District of California

the Court grants summary judgment on these amounts.

Plaintiffs also seek interest of $126,639.39 on their claim based on the Lindquist report and $2,218.93 on their claim based on Account #718.  Defendant disputes Plaintiffs' interest calculation on two grounds: that the interest should be simple, not compounded monthly, and that Defendant's overpayments should be deducted before interest is computed.

Section 1132(g)(2) provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986."  29 U.S.C. § 1132(g)(2).  In turn, the Trust Agreement provides,

> Prior to the filing of a lawsuit, delinquent contributions shall accrue interest from the Due Date until paid at a rate of ten percent (10%) simple interest per annum.  After the filing of a lawsuit, delinquent contributions shall accrue interest from the Due Date until paid at the rates prescribed from time to time pursuant to the underpayment rate of the Internal Revenue Code section 6621.

McCulloch Decl., Ex. A at 1; Ex. B at 17.

Defendant notes that the reference to simple interest per annum with respect to interest prior to the filing of a lawsuit appears immediately before the reference to interest accruing after the filing of a lawsuit.  Therefore, Defendant argues that it is "reasonable that the IRC § 6621 rates should, like the 10% rate, not be compounded."  Defendant's Objections to Interest Calculations at 2.  Plaintiffs counter that the Trust Agreement's reference to "the underpayment rate" of § 6621 indicates that the Trust intended that delinquent contributions should be "treated in

12

**United States District Court**
For the Northern District of California

the way tax underpayments are normally treated under IRC § 6621, at the rates provided in that section, compounded as mandated by IRC § 6622."  Plaintiffs' Reply to Defendant's Objections at 3.  The Court agrees with Plaintiffs, and will award interest compounded monthly as they request.

Defendant also argues that Plaintiffs' interest calculation is inaccurate because it does not take into account Defendant's past overpayments, which are discussed in further detail below. Defendant argues that the amount of the overpayments should be deducted from the delinquent payments prior to any calculation of interest.  However, the overpayments are distinct from the delinquent payments due and, if awarded, can only be used to offset the damages Defendant owes to Plaintiffs.

Therefore, the Court grants Plaintiffs' motion for summary judgment to the extent it seeks these amounts of interest on the delinquent payments discussed above.

B.   Untimely Payments

Plaintiffs also argue that they are entitled to liquidated damages and interest on the $634,249.52 in untimely contributions paid by Defendant for the period August through December, 2003. When delinquent contributions are paid without a lawsuit being filed, the Trust Agreement provides for liquidated damages at a rate of five percent of the delinquent contributions so long as the total amount paid is no greater than $800 and no less than $50. McCulloch Decl., Ex. B at 16.  Further, as noted above, the Agreement provides, "Prior to the filing of a lawsuit, delinquent contributions shall accrue interest from the Due Date until paid at

13

a rate of ten percent simple interest per annum."  <u>Id.</u> at 17.

Therefore, Plaintiffs request $7,637.47 in liquidated damages for the late payments and $6,262.65 in interest.  Defendant does not dispute that the payments were untimely or that either of these amounts is appropriate.  Therefore, the Court grants Plaintiffs' request for these amounts of liquidated damages and interest.

C.   Defenses

1.   Overpayments

Defendant argues that summary judgment is inappropriate on any claim because it has made overpayments in the amount of $62,193.39. Therefore, Defendant asserts that "triable issues of fact exist regarding Advance's overpayments."  Opposition at 18.  Plaintiffs respond that the majority of Defendant's overpayment claims are barred because they were untimely, because Plaintiffs relied on the overpayments or both.

Under the Trust Agreement,

a mistaken Employer contribution may not be returned to the Employer unless a written refund request is submitted to the Trust by the Employer within four years of the Due Date of the report form containing the erroneous contributions.

McCulloch Decl., Ex. A at 9; Ex. B at 19.  Therefore, Plaintiffs argue that Defendant's September 18, 2006 request for a refund "for overpayments made from 1/1/1999 to 12/31/2002, as found and reported by the Trust office for a combined total of $62,193.39" was for the most part untimely.  Chung Decl., Ex. D.  The Lindquist report only included $1,825.48 in overpayments that were paid between September and December, 2002.  <u>See</u> Thiermann Decl., Ex. B.

Plaintiffs further argue that even these non-time-barred

14

**United States District Court**
For the Northern District of California

contributions cannot be refunded because they were "full rate contributions reporting eligibility to persons who were not eligible."  Supplemental Thiermann Decl. ¶ 7.  Therefore, Plaintiffs argue that they relied upon Defendant's representation and need not refund the payments under the Trust Agreement provision that when

> the Trust has provided coverage to ineligible persons in reliance upon mistaken employer contribution report forms (whether or not benefits have already been paid), then . . . [the Trust] may retain the Employer's contributions and refuse to refund any or all of the mistaken portion.

Id., Ex. A at 9; Ex. B at 13.  However, Plaintiffs provide evidence only that the five individuals were "reported as eligible to the Trust," Plaintiffs' Reply at 11, not that they actually provided coverage to those individuals.  This is not enough to establish as a matter of law that Defendant is precluded from seeking a refund of the non-time-barred mistaken payments of $1,825.48.

The Court finds that questions of fact remain regarding Defendant's affirmative defense based on the mistaken overpayment of $1,825.48.

        2.   Laches

Defendant also argues that summary judgment is inappropriate on all of Plaintiffs' claims because they are barred by the affirmative defense of laches.  To raise the defense of laches, Defendant must show unreasonable delay and subsequent prejudice. Brown v. Continental Casualty, 765 F.2d 810, 184 (9th Cir. 1985). Defendant asserts that Plaintiffs did not respond to its objections to the audit report between November, 2004 and May, 2006 despite

its own good faith efforts to negotiate a resolution to the dispute.  However, Defendant overlooks its own failure to pay any portion of the $125,206.66 in benefits that it never disputed that it owed until after this case was filed and its failure to provide Plaintiffs' auditors with the materials needed to assess whether it was fulfilling its fiduciary duties.

Further, Defendant represents that "between June 2002 and the present," it continued to provide "documentation supporting its position that its supervisors are not covered under the MCA." Chung Decl. ¶ 3.  If Plaintiffs were still receiving documentation in support of Defendant's challenges, they were not unreasonable in waiting to file their complaint.

D.   Attorneys' Fees and Accounting Fees

Title 29 U.S.C. § 1132(g)(2)(D) provides, "In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant."  As discussed above, judgment will be entered in favor of Plaintiffs.  As of the time Plaintiffs' motion was filed, they had incurred attorneys' fees of $120,732 and costs totaling $4,463.75.  Miller Decl. ¶¶ 5, 6.  Therefore, the Court will award Plaintiffs $125,195.75 in attorneys' fees and costs.

Section 1132 also provides for the award of "such other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  The Ninth Circuit has held that the recovery of accounting fees is appropriate "[b]ecause an award of audit costs

16

to the prevailing party is consistent with the policy of encouraging full and fair contributions." <u>Operating Eng. Pen. Trust, et al. v. A-C Co.</u>, 859 F.2d 1336, 1343 (9th Cir. 1988). Therefore, the Court will award Plaintiffs $62,366.00, representing their accounting fees. <u>See</u> Thiermann Decl. ¶ 28.

E.   Injunctive Relief

Finally, Plaintiffs seek injunctive relief pursuant to 29 U.S.C. § 1132(a)(3), which provides that they may bring an action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." Plaintiffs request an injunction "directing defendants to not pay any dividends, bonuses or extraordinary salary to its officers or directors until after all monetary damages . . . , as determined by this court have been paid in full." Motion at 24. This request is based on Plaintiffs' belief that "the sole shareholder of Advance, Forrest I. Nolin, will dissipate the corporate assets and render the Corporation insolvent." <u>Id.</u> at 25.

Counsel for Plaintiffs declares on information and belief as follows,

> Nolin was an owner of a previous contributing employer of the Trust, Tripar Enterprises. In the 1980's Tripar Enterprise [sic] failed to make health care contributions due to the Trust exceeding $250,000.00. When the Trust sued it, Tripar Enterprises was dissolved in a bankruptcy proceeding in which no material assets were available to pay the Trust.

Miller Decl. ¶ 7. As the Court found in its earlier preliminary injunction order, this supports Plaintiffs' argument that, absent

17

**United States District Court**
For the Northern District of California

injunctive relief, they likely will not receive the amount owed.

The only remaining question on the merits of Plaintiffs' claims is the whether Defendants are entitled to credit for the $1,825.48 overpayment. Therefore, the Court modifies its earlier preliminary injunction and now enjoins Defendant from paying any dividends, bonuses or extraordinary salary to its officers or directors until after $647,382.08 has been paid in full. This amount represents the sum of the delinquent payments based on the Lindquist audit and Account #718, liquidated damages and interest related to those delinquent payments, interest and liquidated damages related to untimely payments for the period August through December, 2003 and Plaintiffs' attorneys' fees, costs of litigation and accounting fees, less the $1,825.48 of potential overpayment that is still at issue.

II.  Leave to File an Amended Complaint

Federal Rule of Civil Procedure 15(a) provides that leave of the court allowing a party to amend its pleading "shall be freely given when justice so requires." Leave to amend lies within the sound discretion of the trial court, which discretion "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981) (citations omitted). Thus, Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality." Id.; DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (citations omitted).

The Supreme Court has identified four factors relevant to

United States District Court
For the Northern District of California

whether a motion for leave to amend should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party.  Foman v. Davis, 371 U.S. 178, 182 (1962). The Ninth Circuit holds that these factors are not of equal weight; specifically, delay alone is insufficient ground for denying leave to amend.  Webb, 655 F.2d at 980.  Further, the "liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties."  DCD Programs, 833 F.2d at 186.  Rather, the court should consider whether the proposed amendment would cause the opposing party undue prejudice, is sought in bad faith, or constitutes an exercise in futility.  Id. (citing Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398-99 (9th Cir. 1986); United States v. City of Twin Falls, 806 F.2d 862, 876 (9th Cir. 1986); Howey v. United States, 481 F.2d 1187, 1190-91 (9th Cir. 1973); Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983)).

Prejudice typically arises where the opposing party is surprised with new allegations which require more discovery or will otherwise delay resolution of the case.  See, e.g., Acri, 781 F.2d at 1398-99; Guthrie v. J.C. Penney Co., 803 F.2d 202, 210 (5th Cir. 1986).  The party opposing the motion bears the burden of showing prejudice.  DCD Programs, 833 F.2d at 186; Beeck v. Aquaslide 'N' Dive Corp., 562 F.2d 537, 540 (8th Cir. 1977).

Plaintiffs seek leave to amend their complaint to allege four additional causes of action, to add Forrest Nolin as a Defendant and to add the Trust derivatively on behalf of Advance as a Plaintiff.  These proposed amendments are based on Plaintiffs' new

**United States District Court**
For the Northern District of California

allegations that Defendant has improperly transferred hundreds of thousands of dollars to Nolin since the complaint was filed. Plaintiffs allege that these transfers have left Defendant "unable to pay its debts as they became due, which thereby rendered Defendant Advance to be insolvent."  Proposed FAC ¶ 10.  Therefore, Plaintiffs seek to add claims (1) for fraudulent transfer of assets with actual intent to hinder, delay or defraud a creditor in violation of California Civil Code § 3439; (2) for fraudulent transfer of assets with constructive intent to hinder, delay or defraud a creditor in violation of California Civil Code § 3439; (3) for a derivative action against Nolin for knowing receipt of illegal dividends in violation of California Corporations Code § 500; and (4) for imposition of a constructive trust under California Civil Code § 2224.

Defendant opposes the motion, arguing that granting it would prejudice Nolin, that Plaintiffs are seeking the amendment in bad faith and that the amendment would be futile.  Further, Defendant argues that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' proposed claims, all of which arise under state law.

A.   Prejudice

Defendant argues that Nolin will be prejudiced if the motion is granted because he resides in Southern California.  However, as Plaintiffs point out, as the sole shareholder in Advance, Nolin will already be involved in the litigation, and will be called as a witness.  This factor does not weigh against granting leave to amend.

United States District Court
For the Northern District of California

B.   Bad Faith

Defendant next argues that Plaintiffs have acted in bad faith because they have disclosed confidential information in their filings and used information disclosed only for purposes of mediation and because counsel for Plaintiffs has violated her ethical responsibilities.

Defendant argues that Plaintiffs have used information provided to them during and in connection with the parties' court-ordered mediation session in violation of the parties' confidentiality agreement, ADR Local Rule 6-11, the federal mediation privilege and Federal Rule of Evidence 408.  However, Plaintiffs counter, and Magistrate Judge Zimmerman has already found, that these communications occurred the day after the mediation and were outside of the scope of the parties' confidentiality agreements.  Order Granting in Part and Denying in Part Defendant's Motion to Enforce Stipulated Protective Order and Confidentiality Agreements and for Civil Contempt Sanctions, Docket No. 130.

Defendant also argues that counsel for Plaintiffs improperly communicated with Steve Vallen, the outside accountant for Defendant.  According to Plaintiffs' counsel's declaration, Joseph Thiermann, Plaintiffs' auditor, called her to inform her that Vallen had called him and to ask that she participate in the conversation.  McCulloch Decl. ¶ 4.  She declares that Vallen told her and Thiermann that Nolin asked him to call Thiermann "to explain and clarify the change in cash position during the period of December 31, 2006 through the current date."  Id. at ¶ 6.

21

United States District Court

For the Northern District of California

1  Defendant argues that it was improper for Plaintiffs' counsel to

2  speak ex parte with Vallen.  However, Vallen is not a party to this

3  case and is, according to Plaintiffs, an independent outside

4  accountant.  Further, Magistrate Judge Zimmerman has already ruled

5  that counsel's conversation with Vallen and Plaintiffs' disclosure

6  of the information in question was not improper.  Magistrate Judge

7  Zimmerman's Order.

8      The Court finds that there is no bad faith to warrant denying

9  Plaintiffs' motion for leave to file an amended complaint.

10     C.   Futility

11     Finally, Defendant argues that the proposed amendments are

12  futile because the evidence regarding its assets is inadmissible

13  and does not support Plaintiffs' claims.  Further, Defendant argues

14  that because the claims are based on state law, they are preempted

15  by ERISA.  Finally, it argues that the claims do not justify an

16  exercise of supplemental jurisdiction.

17     1.   Evidence

18     Defendant first argues that the evidence gleaned from the

19  conversation with Vallen is inadmissible because of the way in

20  which it was obtained and that it is irrelevant to Plaintiffs'

21  existing ERISA claim so it would not have been discoverable.

22  However, as discussed above, the evidence is not inadmissible.  It

23  was received from a third party outside the context of the

24  mediation.  Further, the information upon which the proposed

25  amendments are based is relevant to the claim for injunctive relief

26  included in the original complaint.

27     Defendant next argues that the evidence cited in Plaintiffs'

28                                  22

counsel's declaration does not support the proposed amendment because it demonstrates that "Advance's current assets are more than sufficient to satisfy the judgment plaintiffs seek in this action."  Opposition to Motion for Leave to File a FAC at 11.  However, the declaration also states that Defendant's accounts payable were greater than its assets at the time of the conversation.  Therefore, the declaration supports Plaintiffs' claim that Defendant is insolvent.

> 2.   ERISA Preemption

Defendant argues that Plaintiffs' proposed state law claims for fraudulent conveyance and constructive trust are preempted by ERISA because "they provide an alternative cause of action to collect monies owed under ERISA."  Opposition at 6.  However, as Plaintiffs argue, the claims are a means of ensuring that Defendant will have the funds necessary to pay any monies owed under ERISA, not an attempt to establish that monies are owed under ERISA.  Therefore, these claims are similar to the claims under California's stop-notice and payment bond statutes which were allowed in Southern California IBEW-NECA Trust Funds v. Standard Industrial Electrical Co., 247 F.3d 920 (9th Cir. 2001).  As in that case, the fraudulent conveyance and constructive trust claims in this case do "not require the establishment of a separate benefit plan, and impose[] no new reporting, disclosure, funding, or vesting requirements for ERISA plans."  Id. at 925.  Further, the claims do "not tell employers how to write ERISA benefit plans or how to determine ERISA beneficiary status, and [do] not condition requirements on how ERISA benefit plans are written."

United States District Court
For the Northern District of California

1    Id.   Therefore, the Court finds that these claims are not preempted

2    by ERISA.

3       Defendant also cites Peacock v. Thomas, 516 U.S. 349 (1996),

4    in support of its argument that allowing a constructive trust to be

5    placed on Nolin's money "would amount to veil-piercing as a means

6    of collection, which is not authorized under ERISA."  Opposition at

7    6.  However, in Peacock, the plaintiff sought to establish federal

8    jurisdiction under ERISA to pierce the corporate veil to collect

9    the benefits awarded to it under ERISA two years earlier.  Peacock

10   stated only that there is no veil-piercing cause of action under

11   ERISA, not that the plaintiffs could not do so under state law.

12   516 U.S. at 354.

13      Plaintiffs' proposed amended claims are not preempted by

14   ERISA.

15          3.   Supplemental Jurisdiction

16      Finally, Defendant argues that the Court should decline to

17   exercise supplemental jurisdiction over Plaintiffs' state law

18   claims.  Under 28 U.S.C. § 1367(a), a federal court has the power

19   to hear pendant state law claims where the federal and state claims

20   are so related as to form part of the same controversy under

21   Article III.  28 U.S.C. § 1367(a); United Mine Workers of Am. v.

22   Gibbs, 383 U.S. 715, 725 (1966).  Under Ninth Circuit law, the

23   relatedness requirement of § 1367(a) is met if the claims derive

24   from a common nucleus of operative fact and, as such, would

25   ordinarily be expected to be tried in the same proceeding.  See

26   Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995).  The Court's

27   exercise of supplemental jurisdiction is discretionary, and the

28                                  24

United States District Court
For the Northern District of California

Court can decline to exercise such jurisdiction, particularly in the interest of economy, convenience, and fairness to the parties. See City of Chicago v. International College of Surgeons, 522 U.S. 156, 173 (1997); Moor v. County of Alameda, 411 U.S. 693, 716-17 (1973).

Defendant argues that the allegedly fraudulent conveyances made in 2006 and 2007 cannot be said to derive from the same nucleus of operative fact as the alleged delinquent contributions due between 1999 and 2003. Defendant again cites Peacock, in which the Supreme Court found that there was no ancillary jurisdiction over a separate action filed under state law to collect ERISA benefits after judgment entered in the ERISA case. However, the Court in Peacock recognized that it had "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments" and distinguished the situation in that case noting that it had "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." 516 U.S. at 357.

Further, as Plaintiffs note, in Thomas, Head & Greisen Employees' Trust v. Buster, 95 F.3d 1449, 1454 (9th Cir. 1996), the Ninth Circuit distinguished Peacock on that basis and allowed the trustees of an ERISA plan to seek disgorgement, under Alaska law, from third parties, as fraudulent transferees, of funds necessary to satisfy the ERISA judgment that had been transferred by the original defendants in the ERISA action. Therefore, the Court

25

exercises its supplemental jurisdiction over Plaintiffs' proposed claims and grants Plaintiffs' motion for leave to file an amended complaint.

CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' motion for summary judgment and GRANTS Plaintiffs' motion for leave to file their FAC (Docket Nos. 55, 95).[3]

Defendant is enjoined from paying any dividends, bonuses or extraordinary salary to its officers or directors until after $647,382.08 has been paid in full.

IT IS SO ORDERED.

11/1/07

Dated: _____          _____
                                      CLAUDIA WILKEN
                                      United States District Judge

_____

[3]Advance's objections to evidence submitted by Plaintiffs (Docket Nos. 71, 83) are DENIED as moot. The Court did not consider any improper or inadmissible evidence in deciding these motions.

United States District Court
For the Northern District of California