**United States District Court**

For the Northern District of California

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

4  CALIFORNIA SERVICE EMPLOYEES HEALTH &        No. C-06-3078 CW
   WELFARE TRUST FUND; MIKE GARCIA,
5  Trustee;  CHARLES GILCHRIST, Trustee;        ORDER GRANTING IN PART
   RAYMOND C. NANN, Trustee; and LARRY          AND DENYING IN PART
6  T. SMITH, Trustee,                           PLAINTIFFS' MOTION TO
                                                DISQUALIFY COUNSEL
7           Plaintiffs,

8           v.

9
   ADVANCE BUILDING MAINTENANCE and
10 FORREST NOLIN,

11          Defendants.
   _____/
12

13       On December 16, 2008, Plaintiffs California Service Employees

14 Health and Welfare Trust Fund (Trust), Mike Garcia, Charles

15 Gilchrist, Raymond C. Nann, and Larry T. Smith filed a motion to

16 disqualify counsel for Defendants Advance Building Maintenance

17 (Advance) and Forrest Nolin, the CEO and sole shareholder of

18 Advance.  On January 8, 2009, Nolin filed an opposition.  On

19 January 15, 2009, Plaintiffs filed a reply.  The Court heard oral

20 argument on January 29, 2009.  Having considered the papers

21 submitted, the arguments of counsel, and the applicable law, the

22 Court hereby GRANTS the motion in part and DENIES it in part.

23                            BACKGROUND

24       The Trust is a non-profit, neutral third-party established to

25 administer health and welfare benefits to members of various unions

26 pursuant to collective bargaining agreements with employers.

27

28

United States District Court

For the Northern District of California

1 Advance was one such employer.  Under the bargaining agreements,

2 Advance was required to make contributions to the Trust for health

3 and welfare benefits for covered employees.

4

5 On May 8, 2006, Plaintiffs filed a complaint against Advance

6 alleging various unpaid benefits, late paid benefits, and related

7 claims for interest and liquidated damages due for the time period

8 from January, 1999 through December, 2002, and for the time period

9 from August, 2003 through December, 2003.

10 On September 18, 2007, Plaintiffs filed a first amended

11 complaint (FAC) alleging four additional causes of action, adding

12 Nolin as a defendant, and adding the Trust as a plaintiff

13 derivatively on behalf of Advance.  In the derivative claim,

14 Plaintiffs allege that Nolin knowingly received illegal dividends

15 at the expense of Advance.  On January 14, 2008, Plaintiffs filed a

16 second amended complaint (SAC) alleging delinquent payments for the

17 time period from January, 2003 through July, 2007.

18 On January 9, 2008, Advance commenced a voluntary dissolution

19 action in Los Angeles County Superior Court.  In October, 2008, the

20 court-appointed receiver in that case filed documents with the

21 state court indicating that the receiver intended to liquidate

22 Advance's assets and move for dissolution of the company.

23 On June 16, 2008, in an effort to resolve the instant case,

24 Advance made an offer of judgment to Plaintiffs pursuant to Federal

25 Rule of Civil Procedure 68.  Plaintiffs accepted the offer on June

26

27

28

2

United States District Court

For the Northern District of California

27, 2008.

Attorney Peter W. Ross[1] has represented Advance since the beginning of this case.  The Court's records also identify Marcia Lynn Pope of Pillsbury Winthrop Shaw Pittman LLP (PWSP) as counsel for Advance.  Ross has represented Nolin since Nolin was added as a defendant.

Over the course of this litigation, Ross has changed law firms at least twice.  In June, 2006, at the time Advance answered the initial complaint, Ross's law firm was named Browne Woods & George LLP (BWG).  The same was true in October, 2007, when Advance answered the FAC.  By January, 2008, when Nolin answered the FAC, Ross's law firm had merged with another firm and was called Dreier Stein Kahan Browne Woods & George LLP (DSKBWG).  On January 7, 2008, Ross notified the Court of this change of firm name on behalf of Advance and Nolin.  By the beginning of 2009, DSKBWG had ceased operations, and Ross returned to BWG.  On January 13, 2009, the Court entered an order permitting Ross to substitute himself -- this time as a BWG attorney -- for DSKBWG as counsel for Nolin. Ross did not file a similar request to substitute counsel for Advance.  According to Nolin's opposition brief, BWG does not intend to represent Advance in this case.  The Court has never

---

[1] Ross has worked with several different law firms and attorneys on this case.  For ease of reference, the Court will refer to defense counsel and their law firms collectively as "Ross" unless otherwise noted.

United States District Court

For the Northern District of California

1   entered an order permitting Ross, BWG, DSKBWG, or PWSP to withdraw

2   from representation of Advance.

3        Over the course of this lawsuit, Ross has defended the

4   depositions of several Advance employees, including managers

5   Raphael Gonzalez, Laura Ochoa, Modesto Arrizon, and Francisco

6   Hernandez.  In addition, Ross has defended the depositions of

7   Steven Vallen, an independent CPA for Advance; Thuy Chung,

8   Advance's controller; Perla Mosieznicki, Advance's president; and

9
10  Nolin.  According to Plaintiffs, Nolin was not present for any

11  deposition other than his own.

12       At Nolin's deposition, he testified that he is a co-owner of

13  Bartels' Harley-Davidson (Bartels'), a company unrelated to

14  Advance.  Nolin testified that he worked sixty to seventy hours per

15  week at Bartels'.  Nolin further testified that Mosieznicki, as the

16  president of Advance, ran Advance's day-to-day operations.  At her

17  deposition, Mosieznicki testified that Nolin worked a few hours a

18
19  day at Advance.

20       Earlier in this case, the Court expressed concern that Ross's

21  joint representation of Advance and Nolin may create a conflict of

22  interest.  Specifically, a conflict appears to arise from

23  Plaintiffs' derivative cause of action, which places Advance, the

24  nominal plaintiff, at odds with Nolin, the defendant.  On this

25
26  basis, Plaintiffs move to disqualify Ross from representing Advance

27  and Nolin.

28

4

United States District Court

For the Northern District of California

1

2                              LEGAL STANDARD

3        Civil Local Rule 11-4 provides, "Every member of the bar of

4   this Court and any attorney permitted to practice in this Court

5   under Civil L.R. 11 must . . . [b]e familiar and comply with the

6   standards of professional conduct required of members of the State

7   Bar of California."  Civ. L. R. 11-4(a)(1).  The California

8   standards of professional conduct include the State Bar Act, the

9   Rules of Professional Conduct of the State Bar of California, and

10  the decisions of any court applicable thereto.  Civ. L. R. 11-4

11  cmt.

12

13       California Rule of Professional Conduct 3-310 provides, "A

14  member shall not, without the informed written consent of each

15  client . . . [a]ccept or continue representation of more than one

16  client in a matter in which the interests of the clients actually

17  conflict."  Cal. Rules of Prof'l Conduct R. 3-310(C)(2).  The Rule

18  further provides, "A member shall not, without the informed written

19  consent of the client or former client, accept employment adverse

20  to the client or former client where, by reason of the

21  representation of the client or former client, the member has

22  obtained confidential information material to the employment."

23  Cal. Rules of Prof'l Conduct R. 3-310(E).

24

25       Where a conflict of interest arises out of simultaneous

26  representation, as described in Rule 3-310(C)(2), the

27

28

5

United States District Court
For the Northern District of California

1   disqualification of the conflicted attorney is automatic.  Forrest

2   v. Baeza, 58 Cal. App. 4th 65, 74 (1997).  Where a conflict of

3   interest arises out of successive representations, as described in

4   Rule 3-310(E), "[t]he initial question . . . is whether there is a

5   'substantial relationship' between the subjects of the former and

6   current representations."  Id. at 73.  If there is a substantial

7   relationship, the court should disqualify the conflicted attorney

8   based on a presumption that "confidences were disclosed during the

9   former representation which may have value in the current

10  relationship."  Id. at 73-74.

11                              DISCUSSION

12  A.    Standing

13
14       As a threshold matter, the Court must determine whether

15  Plaintiffs have standing to move to disqualify Ross.  As Nolin

16  observes, "where . . . the persons who are personally concerned

17  with the alleged conflict of interest are not objecting, and

18  disqualification is sought by a litigation adversary who is not

19  personally interested in the alleged conflict, courts must be

20
21  skeptical."  McPhearson v. Michaels Co., 96 Cal. App. 4th 843, 849-

22  50 (2004).

23
24       In this case, it is Plaintiffs, not Nolin or Advance, who

25  object to the alleged conflict of interest.  In addition, as with

26  any motion to disqualify, Plaintiffs may derive some strategic

27  benefit from Ross's disqualification.  Accordingly, the Court

28

United States District Court
For the Northern District of California

1    evaluates the motion with skepticism.

2        The Court is satisfied, however, that Plaintiffs have

3    standing.  In this instance, Plaintiffs have a personal stake in

4    the resolution of the alleged conflict.  As the parties asserting

5    

6    the derivative cause of action, Plaintiffs stand in the shoes of

7    Advance, the nominal plaintiff.  Because Plaintiffs' and Advance's

8    interests are aligned in this way, Plaintiffs have standing to seek

9    Ross's disqualification.

10   B.   Waiver

11       Neither Advance nor Nolin objects to Ross's dual

12   representation.  Under the California Rules of Professional

13   

14   Conduct, a client may, as a general rule, waive a conflict of

15   interest by providing informed written consent.  See Cal. Rules of

16   Prof'l Conduct R. 3-310.

17       In this case, the conflict may not be waived.  First, Advance

18   has not filed a written waiver.  In addition, in a derivative

19   action, the individual defendant may not waive a conflict of

20   interest on behalf of the organizational defendant.  Forrest, 58

21   

22   Cal. App. 4th at 76-77.  Any such waiver would be meaningless in

23   light of the fact that the individual defendant exercises control

24   over the organizational defendant.  Id.  As a result, Nolin may not

25   waive the alleged conflict of interest for Advance.

26   C.   Mootness

27       Next, Nolin contends that the Court should deny Plaintiffs'

28

United States District Court

For the Northern District of California

motion as moot, because DSKBWG, the law firm named in the title of Plaintiffs' motion, no longer operates, and because DSKBWG no longer represents Nolin.

This argument is frivolous.  Any conflict of interest arising out of Ross's joint representation stays with Ross no matter what law firm he works for.  The fact that Ross now works at BWG, and the fact that BWG has been substituted as counsel for Nolin, do not have any effect on the alleged conflict.

Nolin also argues that the motion is moot because Plaintiffs have accepted Advance's Rule 68 offer, and neither party seeks to withdraw the agreement.  Accordingly, Nolin concludes, the case against Advance has essentially concluded.

This argument misconstrues the effect of the Rule 68 agreement.  That agreement resolved Plaintiffs' claims against Advance.  The claim giving rise to the alleged conflict, however, is Plaintiffs' derivative claim, in which Plaintiffs represent the interests of Advance against Nolin.  This claim would survive even if the Court entered judgment against Advance on Plaintiffs' claims against it.  Because the Rule 68 agreement did not resolve the derivative claim, the Rule 68 agreement has no effect on the alleged conflict.

Third, Nolin contends that the motion is moot because Advance no longer operates and is on the verge of dissolution.  As a result, Nolin asserts that Advance has no "interests" left to

8

United States District Court

For the Northern District of California

1 protect.

2      If Advance ceased to exist, Ross would no longer owe any

3 professional duties to Advance, and any alleged conflict of

4 interest would terminate.  However, Advance still exists, and it is

5 unknown when, if ever, Advance will be dissolved.  In addition,

6 Advance still has at least one interest to protect: its derivative

7 cause of action against Nolin.

8

9      Last, Nolin contends that the motion is moot because

10 Advance's receiver is no longer able to fund Advance's defense of

11 this case.  As a result, Nolin asserts that Ross and Advance's

12 attorney-client relationship has all but concluded.

13

14      The Civil Local Rules require an order of the Court before an

15 attorney may withdraw from representation.  Civ. L. R. 11-5(a).

16 Failure to pay for legal services is a recognized ground for

17 withdrawal.  Cal. Rule of Prof'l Conduct 3-700(C)(1)(f).

18      In this case, the Court has not entered an order for the

19 withdrawal of any of Advance's attorneys.  Accordingly, Ross, BWG,

20 DSKBWG, and PWSP remain counsel for Advance.

21 D.     Existence of a Conflict

22

23      Next, the Court must determine whether a conflict of interest

24 exists, and if so, how to address it.

25      1.    Simultaneous Representation

26      As noted above, an attorney may not "[a]ccept or continue

27 representation of more than one client in a matter in which the

28

9

United States District Court

For the Northern District of California

interests of the clients actually conflict."  Cal. Rule of Prof'l

Conduct 3-310(C)(2).  Ross currently represents both Advance and

Nolin.  In the derivative cause of action, Plaintiffs assert

Advance's interests against Nolin.  With respect to this claim,

therefore, Advance and Nolin are adversaries.  Because Nolin's and

Advance's interests actually conflict, Ross is automatically

disqualified from joint representation.  See Forrest, 58 Cal. App.

4th at 74.

          2.    Successive Representation

          Nolin contends that even if Ross may not jointly represent

Advance and Nolin, Ross may continue to represent Nolin.

Plaintiffs contend that Ross must discontinue representation of

both Nolin and Advance.  As noted above, an attorney must be

disqualified if a substantial relationship exists between a current

representation and a former representation, and the interests of

the current and former clients are adverse.  Such circumstances

give rise to a presumption that "confidences were disclosed during

the former representation which may have value in the current

relationship."  Id. at 73-74.

          Here, there is a substantial relationship between Ross's

"former" representation of Advance and his representation of Nolin.

Ross represented both clients during the same lawsuit -- this case.

In addition, the derivative claim renders Advance's and Nolin's

interests adverse.  Under California law, the Court must presume

United States District Court

For the Northern District of California

that confidential information has passed from Advance to Ross which may have value in Ross's representation of Nolin.

Nolin argues, however, that there is an exception to this rule.  Nolin contends that Ross may continue to represent him because it is "impossible to conceive" of any confidential information that Ross could have received from Advance that is different from the information available to him from Nolin.  See id. at 82.

Forrest is the leading California case on this issue.  In Forrest, three shareholders -- Michael Forrest, Sandra Forrest, and Ritch Ricetti -- owned equal interests in two corporations -- Elgin Auto Body, Inc. and Ba-Cel, Inc.  Id. at 69.  In 1994, Michael Forrest and Ba-Cel sued John Baeza, a former officer and shareholder of Ba-Cel.  Id.  Baeza filed a cross-complaint for indemnity against Ricetti and the Forrests.  Id.  An attorney named David McKim answered the cross-complaint on behalf of Ricetti and the Forrests.  Id.

After several months of litigation, Ricetti hired his own attorney.  Id.  Shortly thereafter, McKim filed a new complaint on behalf of the Forrests and Elgin against Ricetti and Baeza.  Id. In January, 1995, Ricetti successfully moved to have the two cases consolidated.  Id.

As part of the consolidated action, Ricetti filed a derivative claim on behalf of the corporations against the

11

United States District Court

For the Northern District of California

Forrests.  <u>Id.</u> at 71.  Because this derivative claim placed the

corporations' interests at odds with those of the Forrests, Ricetti

moved to disqualify McKim from jointly representing the

corporations and the Forrests.  <u>Id.</u> at 72.  The court-appointed

referee granted Ricetti's motion to disqualify McKim from joint

representation.  <u>Id.</u>  The referee declined, however, to disqualify

McKim from continued representation of the Forrests.  <u>Id.</u>

The California Court of Appeal affirmed.  <u>Id.</u> at 82.  The

court observed that, because the derivative claim pitted the

corporations' interests against those of the Forrests, the referee

properly disqualified McKim from jointly representing the Forrests

and the corporations.  <u>Id.</u> at 75-76.  The court also noted that,

under normal circumstances, because there was a substantial

relationship between McKim's "former" representation of the

corporations and his continued representation of the Forrests,

McKim would be disqualified from continued representation of the

Forrests.  <u>Id.</u> at 82.

The court held, however, that in a derivative lawsuit where

defense counsel has been disqualified from jointly representing the

corporate and individual defendants, the attorney may continue

representing the individual defendants "[w]here . . . the

functioning of the corporation has been so intertwined with the

individual defendants that any distinction between them is entirely

fictional."  <u>Id.</u>  The court reasoned that because the purpose of

12

the "former client" rule contained in Rule 3-310(E) is to protect clients' confidential information, rigid application of that rule would be meaningless where "the sole repositories of corporate information to which the attorney has had access are the individual clients."  Id.

The court concluded that McKim could not know anything of value about the corporations which the Forrests did not also know. See id.  As a result, the court declined to disqualify McKim from continued representation of the Forrests.  Id.

In this case, Plaintiffs contend that Forrest is distinguishable.  Plaintiffs argue that, even though Nolin is Advance's CEO and sole shareholder, Ross has represented several Advance employees who may possess information regarding Advance which Nolin does not also possess.  Plaintiffs point out, for example, that Ross defended the deposition of Mosieznicki, who ran the day-to-day operations of Advance.  In addition, Ross defended the depositions of Chung and Vallen, who appear to have had access to confidential information regarding Advance's finances. Furthermore, Ross defended the depositions of several other Advance managers.  Finally, Plaintiffs contend that Nolin worked more hours per week at Bartels' than at Advance and, therefore, the functioning of Advance could not have "been so intertwined with [Nolin] that any distinction between [the two] is entirely fictional."  Id.

13

United States District Court

For the Northern District of California

1    Plaintiffs fail to distinguish <u>Forrest</u>.  It is true that Ross

2    has represented a number of Advance employees who could possess

3    information about Advance which Nolin does not also possess.

4    Contrary to Plaintiffs' view, however, the same was true in

5    <u>Forrest</u>.  As noted, in <u>Forrest</u>, McKim provided joint representation

6    to both Ricetti and the Forrests for several months.  <u>Id.</u> at 69.

7    As a shareholder of both Elgin and Ba-Cel, Ricetti could have

8    possessed information about the companies which the Forrests did

9    not.  Despite this fact, the Court of Appeal declined to disqualify

10   McKim from continued representation of the Forrests.  The court

11   concluded that it was impossible to conceive of any confidential

12   information relevant to the derivative cause of action which McKim

13   could have received from Ricetti that was different from the

14   information he could have received from the Forrests.  <u>See</u> <u>id.</u> at

15   82.

18        <u>Forrest</u> illustrates that the proper inquiry in this case is

19   not whether Ross could have obtained <u>any</u> information about Advance

20   which is different than the information possessed by Nolin.

21   Rather, the inquiry is whether Ross could have obtained

22   confidential information regarding Plaintiffs' derivative claim

23   which is different than the information possessed by Nolin.

25        Plaintiffs have failed to demonstrate a likelihood that any

26   such information exists.  In their derivative claim, Plaintiffs

27   allege that Nolin knowingly received illegal dividends at the

United States District Court
For the Northern District of California

1  expense of Advance.  Plaintiffs have not suggested any confidential

2  information related to Nolin's alleged receipt of illegal dividends

3  that Advance or its employees possessed but Nolin does not also

4  possess.  The Court is likewise unable to conceive of any such

5  information.  Accordingly, the Court declines to disqualify Ross

6

7  from continued representation of Nolin.[2]

8                              CONCLUSION

9       For the foregoing reasons, Plaintiffs' motion to disqualify

10  counsel (Docket No. 333) is GRANTED in part and DENIED in part.

11  Ross, BWG, and DSKBWG are directed to cease all representation of

12  Advance in connection with this case.  PWSP is directed to appear

13  on behalf of Advance unless the Court enters an order permitting

14

15  the firm to withdraw from representation.

16       IT IS SO ORDERED.

17       3/4/09

18  Dated:_____      _____

19                                     CLAUDIA WILKEN

20  _____

21       [2] In addition to Forrest, the parties have extensively briefed
    Gong v. RFG Oil, Inc., 166 Cal. App. 4th 209 (2008).  The parties'
22  emphasis on this case is misplaced.  In Gong, an attorney jointly
    represented a corporation and a majority shareholder of that
23  corporation.  Id. at 213.  A conflict of interest arose when the
    corporation's interests became adverse to those of the shareholder.
24  Id.  Unlike the situation in the instant case, however, the
    conflicted attorney in Gong never represented any employee or
25  shareholder of the corporation other than the individual defendant
    whose interests gave rise to the asserted conflict.  Id.
26  Accordingly, in contrast to Forrest, Gong does not speak to the
    factual scenario before the Court.  As such, it is Forrest, not
27  Gong, which is applicable here.

28

                                    15

United States District Court

For the Northern District of California

1

                              United States District Judge

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28