**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SERVICE EMPLOYEES HEALTH & WELFARE TRUST FUND, MIKE GARCIA, Trustee, CHARLES GILCHRIST, Trustee, RAYMOND C. NANN, Trustee, LARRY T. SMITH, Trustee, and CALIFORNIA SERVICE EMPLOYEES HEALTH & WELFARE TRUST FUND derivatively on behalf of ADVANCE BUILDING MAINTENANCE,<br><br>    Plaintiffs,<br><br>  v.<br><br>ADVANCE BUILDING MAINTENANCE, INC., XL HOG, INC. and FORREST NOLIN, individually,<br><br>    Defendants.<br>_____/ | No. C-06-3078 CW<br><br>ORDER DENYING DEFENDANT XL HOG'S MOTION TO DISMISS |

    In this ERISA case, Defendant XL Hog has filed a motion to dismiss asserting that the claims against it are barred by <u>res judicata</u> and collateral estoppel and that the Court has no jurisdiction to hear the matter.  Plaintiffs California Service Employees Health & Welfare Trust Fund (Trust) and trustees Mike Garcia, Charles Gilchrist, Raymond Nann and Larry Smith oppose the motion.  The matter was heard on June 18, 2009.  Having considered oral argument and all of the papers filed by the parties, the Court denies XL Hog's motion.

BACKGROUND

As discussed in the Court's earlier orders, the Trust is a non-profit, neutral third party established to administer health and welfare benefits to members of various unions pursuant to collective bargaining agreements with employers including Advance. Nolin was the CEO and sole shareholder of Advance. This dispute arises out of successive collective bargaining agreements (CBAs), also called Maintenance Contractors Agreements (MCAs), between Advance and members of Local 1877 (previously Local 399) of the Service Employees International Union (SEIU). Under the agreements, Advance was required to make contributions to the Trust for health and welfare benefits for covered employees.

On May 8, 2006, Plaintiffs filed this complaint against Advance, alleging various unpaid benefits, late paid benefits and related claims for interest and liquidated damages due for the time period January, 1999 through December, 2002 and on two accounts for the time period August, 2003 through December, 2003. On November 1, 2007, the Court granted in part Plaintiffs' motion for summary judgment, finding that the only remaining question on the merits of Plaintiffs' claims is whether Advance is entitled to credit for a $1,825.48 overpayment. The Court also granted Plaintiffs' request for injunctive relief and entered a preliminary injunction preventing Advance from paying any dividends, bonuses or extraordinary salary to its officers or directors until after $647,382.02 owed to Plaintiffs is paid in full. Finally, the Court granted Plaintiffs leave to file an amended complaint alleging four additional causes of action, adding Forrest I. Nolin as a Defendant

2

and adding the Trust derivatively on behalf of Advance as a Plaintiff.  On December 26, 2007, the Court denied Nolin's motion to dismiss the amended complaint.  On January 8, 2008 the Court granted Plaintiffs leave to file a seconded amended complaint alleging delinquent payments for the time period January, 2003 through July, 2007.

On January 9, 2008, Advance filed an action for voluntary wind-up and dissolution, and an application for an order appointing a receiver.  These filings were made in the Superior Court of California for the County of Los Angeles (Western District) (Case no. SS 016358).

On June 26, 2008, Plaintiffs accepted Advance's offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure in the sum of $955,760.56, plus attorneys' fees.

On October 6, 2008, the receiver filed a motion in the state court receivership proceeding for permission to close the operations of Advance.  Although potential buyers were interested in purchasing Advance, the receiver was unable to sell the business.  One written offer developed but the interested buyer could not obtain financing.  Other potential buyers lost interest because Advance's management did not provide accurate and timely information requested by the potential buyers and Advance would not commit to a buyer regarding non-competition and transitional consulting arrangements.

On October 31, 2008, during a status conference and hearing on the receiver's request to close Advance, the receiver notified the state court and the Trust of an intended sale of Advance's assets

3

1  to Nolin or an entity formed by him, for $300,000.  The contract of
2  sale stated that the assets would be sold free and clear of any
3  liability to the Trust.  Specifically, the contract provided,

> Neither Nolin nor Buyer shall assume nor shall either of them be responsible for payment of any of the following:
>
> (a) professional fees owing to the Receiver and his attorneys and agent, including Ballenger Cleveland & Issa, LLC;
>
> (b) obligations of [Advance] to the California Service Employees Health & Welfare Trust Fund arising before the appointment of the Receiver (even though such obligations may have been awarded or fixed after appointment of the Receiver), including any and all amounts included in [Advance's] Rule 68 offer of judgment or otherwise awarded by the United States District Court of the Northern District of California in case no. C 06-03078 CW, <u>California Service Employees Health & Welfare Trust Fund, et al. v. Advance Building Maintenance and Forest I. Nolin</u>;
>
> (c) any other obligations of [Advance] existing prior to the appointment of the Receiver.

14 McCulloch Decl., Exh. D.  After briefing and oral argument on the
15 sale, and over the Trust's objections, the state court approved the
16 sale to Nolin "or his nominee ('Buyer'), it being contemplated that
17 Nolin will form a new entity prior to Closing which shall become
18 the Buyer hereunder."  Id.  Before the sale closed, Nolin formed XL
19 Hog, which officially became the buyer.[1]  The Trust then filed a
20 third amended complaint (TAC), adding XL Hog as a defendant and
21 claims against it for successor liability.  The receivership and
22 dissolution proceedings continue to progress state court because
23 the receiver still maintains control over Advance's assets.
24     XL Hog now moves to dismiss all claims against it arguing that
25 the claims are barred by <u>res judicata</u> and collateral estoppel and

---

[1] The Court takes judicial notice of the documents from the state court action.

4

1  that this Court lacks jurisdiction under the Rooker-Feldman
2  doctrine.

## LEGAL STANDARDS

I. Motion to Dismiss for Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Rule 12(b)(6) is appropriate if the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

II. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. Federal subject matter jurisdiction must exist at the time the action is commenced. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988). A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears. Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or

5

allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint. Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

DISCUSSION

I.  Res Judicata

Defendant XL Hog argues that Plaintiffs' claims against it are precluded by the doctrine of res judicata. This doctrine, also known as claim preclusion, prohibits the re-litigation of any claims that were raised or could have been raised in a prior action. W. Radio Servs. Co., Inc. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997) (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)). The purpose of res judicata is to "relieve parties of the cost and vexation of multiple law suits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Marin v. HEW, Health Care Fin. Agency, 769 F.2d 590, 594 (9th Cir. 1985) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). Res judicata operates where there is "1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties." W. Radio, 123 F.3d at 1192 (citing Blonder-Tongue Labs. v. Univ. of Ill. Found., 402 U.S. 313, 323-24 (1971)). To determine the preclusive effect of a state court judgment, the court looks to state law. Manufactured Home Cmtys. Inc. v. City of San Jose, 420 F.3d 1022, 1031 (9th Cir.2005).

The parties first dispute whether the state court's order approving the sale of Advance's assets to XL Hog constitutes a

6

final state court judgment. A "judgment is not final for purposes of collateral estoppel while open to direct attack, e.g., by appeal." Abelson v. National Union Fire Insurance, 28 Cal. App. 4th 776, 787 (1994).

XL Hog argues that, because court approval of the sale was immediately appealable to the California Court of Appeal, the order was a final judgment. XL Hog relies on cases that hold that a court order approving the sale of real property involved in litigation is separately appealable. See Stocker v. Rattner, 22 Cal. App. 3d 965, 969 (1972) ("It can, of course, make no difference that the ruling complained of is denominated an order, rather than a judgment. If it has the effect of a final determination of property rights, it is appealable.") However, XL Hog only cites one case for the proposition that an order approving the sale of an asset by a receiver is immediately appealable. People v. Stark, 131 Cal. App. 4th 184 (2005). In Stark, the court did not directly address whether such an order is immediately appealable. Further, at issue in Stark was the sale of an auto dealership's assets and real estate. Thus, real property rights were transferred as a result of the court's order. Here, no real property rights have been transferred. There has been the sale of some, but not all, of Advance's assets, and the assumption of some, but not all, of Advance's liabilities. Notably, there are still outstanding assets and liabilities to be resolved in the state proceeding. Therefore, the time to appeal the order allowing the sale has not yet run. There has not been a final judgment in the state proceeding.

7

1     The parties also dispute whether there is an identity of
2 claims between the two cases. To determine the likeness of the
3 claims California utilizes the primary right theory. <u>Mycogen Corp.</u>
4 <u>v. Monsanto Co.</u>, 28 Cal. 4th 888, 904 (2002).

> Under this theory, a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. . . . [T]he primary right is simply the plaintiff's right to be free from the particular injury suffered. It must therefore be distinguished from the legal theory on which liability for that injury is premised: . . . The primary right must also be distinguished from the remedy sought: The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other. [T]he harm suffered is the significant factor in defining a primary right.

<u>Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of America</u>, 133 Cal. App. 4th 1319, 1327 (2005) (internal citations and quotations omitted). XL Hog asserts that, because the state court determined that assets would be sold to it free and clear of any liability to the Trust, the Trust cannot now claim that it is in any way liable for Advance's debts to the Trust. However, the primary right at issue in the claims against XL Hog is significantly different than the one at issue in state court. In the present case, Plaintiffs assert their right to satisfy their judgment for delinquent contributions and related remedies under ERISA from XL Hog as the successor of Advance. At issue in the state proceeding was whether Advance and the receiver were conducting a fair sale of Advance's assets so as to minimize the harm to creditors.

Further, Plaintiffs sought a different remedy in the state

8

proceeding from the one they seek in the present case. In the state case, Plaintiffs sought to delay the sale of Advance so as to allow the possibility that it could be sold for a higher price. In the federal claim, Plaintiffs seek to enforce against Defendant XL Hog the entire $1.3 million judgment obtained against Defendant Advance. Therefore, the Court concludes that the claims in the state proceeding did not involve the same primary right as the claims in the present action. Accordingly, res judicata does not bar Plaintiffs' claims against XL Hog.

II. Collateral Estoppel

Collateral estoppel bars relitigation of an issue decided at a previous proceeding if (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding. Daar & Newman v. VRL Intern., 129 Cal. App. 4th 482, 489 (2005).

The parties dispute whether there is an identity of issues between the two cases. Plaintiffs' TAC alleges that

> Defendant XL Hog is a mere continuation of Defendant Advance because:
>
> (1) XL Hog was initially capitalized with the assets purchased from Defendant Advance by Defendant Nolin with awareness of the claim of Plaintiff Trust,
>
> (2) Defendant Advance received inadequate consideration for the assets transferred to Defendant XL Hog and
>
> (3) Defendant XL Hog had the same equitable owner, management, other employees, equipment, customers, job sites and trade name after the transfer of assets as Defendant

9

> Advance had before the transfer.
>
> Furthermore, Defendant Nolin purchased the assets of Defendant Advance and capitalized Defendant XL Hog with the assets purchased from Defendant Advance in furtherance of his fraudulent scheme to evade liability for the claims of the Trust.
>
> Accordingly, Defendant XL Hog is the successor of Defendant Advance for the purpose of the liability of Defendant Advance to Plaintiff Trust.

TAC ¶¶ 70-73. The state court did not necessarily determine the adequacy of the consideration paid by Nolin for Advance's assets. In the state proceeding, Plaintiffs objected to the sale of Advance's assets, asserting that the sale price was inadequate and that the receiver and Nolin committed misconduct. At the hearing on the matter, the court expressed its concern about "a sale to Mr. Nolin in view of the federal action and the fact that he is an insider," "the effect of disapproving the sale on employees who may very well lose their jobs" and "the ability of the trust as a creditor of [Advance] to recover the judgment that it has won against [Advance] and Nolin in the federal action." McCulloch Decl., Exh. E at 3. However, in the order allowing the sale of Advance's assets, the state court did not provide a basis for its decision. The order stated:

> ORDERED that the Receiver is authorized to sell certain assets of [Advance] pursuant to the terms of the Agreement attached to the Motion; and it is further
>
> ORDERED that the sale of assets as described above shall include the assumption of certain liabilities by the Buyer as set forth in the Agreement attached to the Motion; and it is further
>
> ORDERED that the Receiver is authorized to take any and all steps necessary and appropriate to consummate the transaction described in the Agreement.

10

1  Because the state court did not provide any analysis as to how it
2  came to its conclusions, the Court cannot conclude that the
3  adequacy of the consideration paid by Nolin for Advance's assets
4  was necessary to the state court's decision.  Moreover, even if
5  collateral estoppel barred relitigation of the adequacy of the
6  consideration, it would not bar litigation of other indicia of
7  successorship liability.  Accordingly, collateral estoppel does not
8  bar Plaintiffs' claims.

III. <u>Rooker-Feldman</u> Doctrine

XL Hog argues that Plaintiffs' TAC asks the Court to review a state court decision, which review is barred by the <u>Rooker-Feldman</u> doctrine.  The federal district courts lack jurisdiction to review state court orders and judgments.  <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).  Only the United States Supreme Court can review state court orders and judgments.  <u>Id.</u>  This jurisdictional limitation on the district courts' power is known as the <u>Rooker-Feldman</u> doctrine.  <u>Id.</u>

A federal action constitutes a de facto appeal of a state judgment where "claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules."  <u>Bianchi v. Rylaarsdam</u>, 334 F.3d 895, 898 (9th Cir. 2003).

Here, the claims raised in the federal court action are not inextricably intertwined with the state court's order allowing the

11

sale of Advance's assets.  Thus, adjudicating the federal claim will not undercut the state court order.  Accordingly, the <u>Rooker-Feldman</u> doctrine does not apply in this case.

CONCLUSION

For the foregoing reasons, the Court denies Defendant XL Hog's motion to dismiss.

IT IS SO ORDERED.

Dated: 7/20/09  
_____
CLAUDIA WILKEN
United States District Judge

12