1  BROWNE WOODS GEORGE LLP
   Peter W. Ross (No. 109741)
2  2121 Avenue of the Stars, 24th Floor
   Los Angeles, CA  90067
3  Telephone:  310.274.7100
   Facsimile:  310.275.5697
4
   Attorneys for Defendants
5  FORREST I. NOLIN and
   XL HOG, INC.
6

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11 CALIFORNIA SERVICE EMPLOYEES          CASE NO. C 06 3078 CW
   HEALTH & WELFARE TRUST FUND,
   MIKE GARCIA, Trustee, CHARLES
12 GILCHRIST, Trustee, RAYMOND C.        **(1) OPPOSITION OF FORREST
   NANN, Trustee, and LARRY T. SMITH,    NOLIN AND XL HOG, INC. TO
13 Trustee, and CALIFORNIA SERVICE       PLAINTIFFS' MOTION TO
   EMPLOYEES HEALTH & WELFARE            REMOVE DESIGNATIONS OF
14 TRUST FUND derivatively on behalf of  "HIGHLY CONFIDENTIAL –
   ADVANCE BUILDING                      ATTORNEY'S EYES ONLY"
15 MAINTENANCE,                          AND (2) NOTICE OF
                                         MOOTNESS RE PLAINTIFFS'
16              Plaintiffs,              MOTION TO REVISE
                                         PROTECTIVE ORDER;
17       vs.
                                         DECLARATION OF FORREST
18 ADVANCE BUILDING                      NOLIN
   MAINTENANCE, INC., XL HOG, INC.
19 and FORREST I. NOLIN, individually,   Date:    October 7, 2009
                                         Time:    10:00 a.m.
20              Defendants.              Judge:   Hon. Bernard Zimmerman
                                                  COURTROOM G
21                                                FIFTEENTH FLOOR
                                                  450 Golden Gate Ave..
22                                                San Francisco, CA 94102

23                                       Action Commenced:  May 8, 2008
24

25

26

27

28
   235702_1.DOC

   ───────────────────────────────────────────────────────────
   OPPOSITION OF FORREST NOLIN AND XL HOG, INC. TO PLAINTIFFS' MOTION TO REMOVE
   DESIGNATIONS OF "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY"

1    **I.      PRELIMINARY STATEMENT.**

2           Plaintiffs have moved to remove the designation "HIGHLY CONFIDENTIAL

3    – ATTORNEYS' EYES ONLY" from all documents produced in this action

4    bearing that designation.  Plaintiffs have also moved to revise the protective order

5    governing this case.  After plaintiffs filed their motion, the parties agreed to a

6    revised version of the protective order.  The Court signed the revised protective

7    order on August 18, 2009.  With respect to the protective order, plaintiffs' motion

8    is therefore moot.  With respect to the designation "HIGHLY CONFIDENTIAL –

9    ATTORNEYS' EYES ONLY," for the reasons set forth below, plaintiffs' motion is

10   moot with respect to certain documents and should be denied with respect to other

11   documents.

12   **II.     ARGUMENT.**

13          **A.      Mr. Nolin and XL Hog Were Entitled to Rely On The Designations**

14                   **Of Others.**

15          With the exception of a few pages, most of the documents at issue in

16   plaintiffs' motion were not designated as highly confidential by Mr. Nolin or by XL

17   Hog.  Although neither Mr. Nolin and XL Hog was the designating party, they were

18   both entitled to rely on the designations, at least up until the point at which those

19   designations were challenged.  Quite simply, the protective order does not require

20   non-designating parties to "join", formally or informally, in the confidentiality

21   designations of other parties.  The protections which the protective order affords to

22   documents designated by *any* party as confidential or highly confidential plainly

23   inure to the benefit of *all* parties.  Accordingly, neither Mr. Nolin nor XL Hog was

24   required to, nor did, join in the designations at issue in plaintiffs' motion.

25          Now that the plaintiffs have moved to remove the designations, however, Mr.

26   Nolin and XL Hog appreciate that, absent some showing by some party of the

27   necessity for the designations, the Court may not have any basis to deny plaintiffs

28

235702_1.DOC                                    -1-

1  the relief they seek.[1]  Accordingly, with respect to some of the documents at issue,

2  Mr. Nolin and XL Hog set forth below certain reasons that the current designations

3  should not be removed.  With respect to other documents at issue, Mr. Nolin and

4  XL Hog do not oppose the removal of the "HIGHLY CONFIDENTIAL –

5  ATTORNEY'S EYES ONLY" designation and therefore do not oppose plaintiffs'

6  motion with respect to these documents.  However, Mr. Nolin and XL Hog do

7  hereby designate these documents as "CONFIDENTIAL" under the terms of the

8  protective order.

9       In addition, ***with respect to any document at issue herein from which the***

10  ***Court determines that the designation "HIGHLY CONFIDENTIAL –***

11  ***ATTORNEY'S EYES ONLY" should be removed, Mr. Nolin and XL Hog hereby***

12  ***designate every such document "CONFIDENTIAL" under the terms of the***

13  ***protective order and urge the Court to maintain at least that level of designation.***

14       **B.    Mr. Nolin and XL Hog Do Not Oppose Plaintiffs' Motion With**

15            **Respect to Certain Documents And Hereby Designate Those**

16            **Documents "CONFIDENTIAL."**

17       Mr. Nolin and XL Hog do not oppose the removal of the designation

18  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" from the following

19  documents:  **AB 001625 – AB 001774, SV 0001 – SV 0012, SV 0102 – SV 0154**.

20  Mr. Nolin and XL Hog hereby designate these documents "CONFIDENTIAL"

21  under the terms of the protective order.

22       **C.    Mr. Nolin and XL Hog Oppose Plaintiffs' Motion With Respect To**

23            **Documents Containing XL Hog's Trade Secret Information.**

24       The protective order in this case defines "Highly Confidential – Attorneys'

25  Eyes Only" information or items as "extremely sensitive 'Confidential Information

26  ――――――――――
[1] XL Hog and Mr. Nolin note that defendant Advance Building Maintenance, Inc.,
27  the party which made most of the designations at issue here, is unrepresented as a
   result of plaintiffs' earlier motion to disqualify its counsel.  As the Court is no doubt
28  aware, the fact that Advance is unrepresented does not mean Advance has no
   interest in maintaining its designations.
   235702_1.DOC                              -2-

1  or Items' whose disclosure to another Party or nonparty would create a substantial

2  risk of serious injury that could not be avoided by less restrictive means."   The

3  protective order in turn defines "Confidential Information or Items" as

4  "information. . . or tangible things that qualify for protection under standards

5  developed under F.R.Civ.P. 26(c).  Rule 26(c)(1)(G) provides that protective orders

6  may extend to "trade secret. . . or other commercial information."  Pursuant to the

7  protective order and Rule 26(c), therefore, the designation "HIGHLY

8  CONFIDENTIAL – ATTORNEYS' EYES ONLY" is appropriate for documents

9  containing trade secret information, provided that the disclosure of such

10  information to plaintiffs would create a substantial risk of serious injury that could

11  not be avoided by less restrictive means.  For the reasons set forth below, many of

12  the documents currently designated "HIGHLY CONFIDENTIAL – ATTORNEYS'

13  EYES ONLY" contain XL Hog's trade secret information.  The disclosure of this

14  information to plaintiffs would create a substantial risk of serious injury to XL Hog

15  that cannot be avoided by less restrictive means under the terms of the protective

16  order.  The "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

17  designation of these documents should therefore not be removed.

18         One of the plaintiff-trustees in this action, Larry Smith, is a senior managerial

19  official at XL Hog's largest and most aggressive competitor, American Building

20  Maintenance ("American").  Approximately seven or eight years ago, Mr. Smith

21  and American attempted to buy defendant Advance Building Maintenance, Inc.

22  ("Advance").  Mr. Nolin, the owner of Advance, refused to sell.  From that point

23  forward, Mr. Smith and American deliberately targeted Advance's accounts with

24  extremely low pricing.  Through these tactics, Mr. Smith and American succeeded

25  in taking from Advance accounts comprising over 8,000,000 square feet of

26  business, including Advance's single largest account.  Those losses cost Advance

27  over $775,000 per year in income.  The majority of these accounts were taken by

28  Mr. Smith and American after this lawsuit was filed.  *See* declaration of Forrest

1   Nolin, infra, ("Nolin Decl.") ¶ 3.

2          As a result of these losses and the present lawsuit, during January of last

3   year, Advance sought and was granted the appointment of a receiver to take control

4   of Advance's assets and wind up the business.  *See* Nolin Decl. ¶ 4.  In November

5   of 2008, Mr. Nolin caused the entity XL Hog to be formed.  Mr. Nolin is the owner

6   and chief executive officer of XL Hog.  With the approval of the Los Angeles

7   Superior Court, XL Hog purchased Advance's assets and most of its liabilities from

8   the receivership estate.  The court order approving the sale expressly provides that

9   Advance's assets were purchased free and clear of any liability Advance might be

10  adjudged to have to plaintiffs here.  *See* Nolin Decl. ¶ 5.

11         As a result of the court-approved sale, all of the documents and information

12  that formerly belonged to Advance now belong to XL Hog.  These documents and

13  this information – and the confidentiality thereof – are as important to XL Hog's

14  business as they were to Advance's business.  Further, following XL Hog's

15  acquisition of Advance's assets, Mr. Nolin is fearful that Mr. Smith and American

16  will now turn their attention to poaching XL Hog's accounts.  *See* Nolin Decl. ¶ 6.

17         Under the terms of the protective order in this lawsuit, the only way to

18  prevent documents from being shown to Mr. Smith is to designate them "HIGHLY

19  CONFIDENTIAL – ATTORNEYS' EYES ONLY."  Under the terms of the

20  protective order, documents which are merely designated "CONFIDENTIAL" may

21  be shown to parties.  Mr. Smith, as a plaintiff-trustee, is a party to this lawsuit.

22  Accordingly, documents which are merely designated "CONFIDENTIAL" may be

23  shown to Mr. Smith.  By seeking to remove the "HIGHLY CONFIDENTIAL –

24  ATTORNEYS' EYES ONLY" designation from the documents produced in this

25  action, plaintiffs are essentially seeking permission to show these documents to

26  Advance's largest and most aggressive competitor.  *See* Nolin Decl. ¶ 7.

27         This Court has noted with respect to information subject to protection as

28  "trade secrets" under Rule 26(c) that "The Ninth Circuit has yet to define the term

235702_1.DOC                                      -4-

1   "trade secret" as it appears in Rule 26(c)."  *Contratto v. Ethicon, Inc.*, 227 F.R.D.

2   304, 307 n3 (N.D. Cal. 2005).  In the absence of a definition, this Court has offered

3   the guidance that "Where a business is the party seeking protection, it will have to

4   show that disclosure would cause significant harm to its competitive and financial

5   position.  That showing requires specific demonstrations of fact, supported where

6   possible by affidavits and concrete examples, rather than broad, conclusory

7   allegations of harm."  *Id*. at 307.  As set forth herein, based on the facts contained in

8   the declaration of Forrest Nolin below, XL Hog and Mr. Nolin maintain that

9   disclosure of Advance's financial statements, schedules of revenues, costs, and

10  expenses, general ledgers, and documents containing similar information would

11  cause significant harm to XL Hog's competitive and financial position.

12       By their motion, plaintiffs seek to remove the "HIGHLY CONFIDENTIAL –

13  ATTORNEYS' EYES ONLY" designation from Advance's **monthly financial**

14  **statements and schedules of revenues, costs, and expenses**.  These documents

15  reflect the general profitability of the business which has been purchased by XL

16  Hog.  *See* Nolin Decl. ¶ 8.  Such information constitutes trade secrets under

17  California Civil Code section 3426 in that it "derives independent economic value,

18  actual or potential, from not being. . . known to. . . other persons who can obtain

19  economic value from its disclosure or use."  Such information also satisfies this

20  Court's guiding precept regarding "trade secrets" under Rule 26(c) in that its

21  disclosure would cause significant harm to XL Hog's competitive and financial

22  position.  Specifically, a competitor of XL Hog, such as plaintiff-trustee Mr. Smith,

23  could approach XL Hog's customers using information about XL Hog's profitability

24  as a selling point.  If the information reveals that the business is generally

25  profitable, the competitor may use this information to persuade the customer that

26  XL Hog is charging the customer too much and making too much money from the

27  customer.  If the information shows that the business is generally not profitable, the

28  competitor may use this information to persuade the customer that XL Hog may not

1   stay in business and may not be relied upon to provide ongoing services to the

2   customer.  In either case, the customer may be persuaded by means of the

3   disclosure or use of this information to deprive XL Hog of the customer's business.

4   The only way for XL Hog to avoid such misuse of this information is to keep it out

5   of the hands of competitors.  *See* Nolin Decl. ¶ 8.

6           By their motion, plaintiffs also seek to remove the "HIGHLY

7   CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation from Advance's

8   **general ledgers**.  These documents reflect the cost to Advance of servicing each

9   customer account and the price that Advance charged each account.  It is

10  reasonably inferable that XL Hog's costs and pricing is similar to if not the same as

11  Advance's costs and pricing.  Information about XL Hog's costs and pricing

12  constitutes trade secrets under California Civil Code section 3426 in that it "derives

13  independent economic value, actual or potential, from not being. . . known to. . .

14  other persons who can obtain economic value from its disclosure or use."  Such

15  information also satisfies this Court's guiding precept in that its disclosure would

16  cause significant harm to XL Hog's competitive and financial position.

17  Specifically, a competitor of XL Hog, such as plaintiff-trustee Mr. Smith, could use

18  this information to undercut XL Hog's pricing.  As set forth above, Mr. Smith and

19  American did in fact take accounts away from Advance by low-ball pricing.  If

20  they, or any competitor, were armed with specific information about how much XL

21  Hog charges an account and how much it costs XL Hog to service that account, the

22  likelihood of XL Hog being underbid increases.  The only way for XL Hog to avoid

23  such misuse of this information is to keep it out of the hands of competitors.  *See*

24  Nolin Decl. ¶ 9.

25          By their motion, plaintiffs also seek to remove the "HIGHLY

26  CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation from Advance's

27  **appraisal and marketing brochure** prepared at the direction of the receiver.

28  These documents contain the same kinds of information as the documents discussed

1   above and, for the same reasons, they should be protected from disclosure to XL

2   Hog's largest and most aggressive competitor.  *See* Nolin Decl. ¶ 12.

3          The financial statements, schedules of revenues, costs, and expenses, general

4   ledgers, and documents containing similar information described above were only

5   shared on a need-to-know basis with people at Advance, including only the

6   president, the chief financial officer, and Mr. Nolin.  These documents were kept in

7   a room on a computer to which only these people had access.  The room was kept

8   locked during non-business hours.  These same protections and procedures have

9   been applied with respect to these documents and this information at XL Hog.  By

10  order of the Los Angeles Superior Court, the receiver also has access to a set of

11  these documents.  The receiver's set of documents is also kept in a locked room to

12  which only the receiver has access.  *See* Nolin Decl. ¶ 13.  By order of the Los

13  Angeles Superior Court, the appraisal and marketing brochure have also been

14  treated as highly confidential by the receiver and the parties.

15         Many of the cases cited and relied upon by plaintiffs did not involve motions

16  to remove confidentiality designations.  Rather, they involved motions to compel

17  production of information.  Such cases are inapposite here because here, the

18  information has already been produced.

19  **D.      Mr. Nolin and XL Hog Oppose Plaintiffs' Motion With Respect To**

20  **Documents Containing Information Protected By Mr. Nolin's**

21  **Constitutional Right To Privacy.**

22         Under the terms of the protective order and Rule 26(c), it is appropriate for

23  information protected by the California constitutional right to privacy to be

24  designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  It is

25  well established that the right of privacy embodied in Article 1, Section 1 of the

26  California Constitution applies to confidential financial information.  *See, e.g.*

27  *Valley Bank of Nevada v. Sup. Ct.*, 15 Cal. 3d 652, 656 (1975); *Dompelling v. Sup.*

28  *Ct.*, 117 Cal. App. 3d 798 (1981); *see also Fortunato v. Sup. Ct.*, 114 Cal. App. 4th

475, 480 (2003); *Cobb v. Sup. Ct.* 99 Cal. App. 3d 543, 550 (1979).  It is equally well established that the constitutional right of privacy limits a litigant's right to discovery and can be overcome only when justified by a compelling state interest and, even then, only under narrowly circumscribed conditions.  *See, e.g., Morales v. Sup. Ct.*, 99 Cal. App. 3d 283, 287 (1979); *Fults v. Sup. Ct.*, 88 Cal. App. 3d 899, 903-904 (1979).  As stated in *Board of Trustees v. Sup. Ct.*, 119 Cal. App. 3d 516 (1981):

> When compelled disclosure intrudes on constitutionally
> protected areas, it cannot be justified solely on the ground
> that it may lead to relevant information.
>
>                                    * * *
>
> And even when discovery of private information is found
> directly relevant to the issues of ongoing litigation, it will
> not be automatically allowed; there must then be a careful
> balancing of the compelling public need for discovery
> against the fundamental right of privacy.
>
>                                    * * *
>
> Even where the balance, because of a compelling state
> purpose, weighs in favor of disclosure of private
> information, the scope of such disclosure will be narrowly
> circumscribed; such an invasion of the right of privacy
> must be drawn with narrow specificity.  [citations and
> internal quotation marks omitted]

Federal courts recognize a constitutionally based right of privacy that may limit the disclosure of information in discovery.  *See, e.g., Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995).  In particular, federal courts have specifically "recognize[d] a privacy interest under Art. 1, sect. 1 of the California Constitution."  *Id.* at 617; *see also Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D.

281, 284 (C.D.Cal., 1998).  It must be noted that the right to privacy in California is not a mere evidentiary privilege.  It is a constitutional privilege.  The Ninth Circuit has recognized a distinction between evidentiary privileges and constitutional privileges.  *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999).  Unlike mere evidentiary privileges, which are creatures of state statutes and the common law, the ***constitutional*** privilege of privacy is "inalienable."  *See* California Constitution, Article 1, Section 1.  For this reason, defendants submit that the right to privacy applies unequivocally in all proceedings in California, regardless of whether they are pending in state or in federal court.  Even if this court were to regard the right to privacy as a mere evidentiary privilege, however, the Court should still apply that privilege here.  Even in federal court, state law privileges apply to state law claims.  FRE 501.  The claims against Mr. Nolin for fraudulent transfers and the claims against XL Hog for successor liability are state law claims.

By their motion, plaintiffs seek to remove the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation from Advance's **trial balances and balance sheets**.  These documents provide one method of valuing the business that was purchased by XL Hog.  By subtracting the total liabilities from the total assets, one arrives at a value for the business.  Mr. Nolin is the sole owner of Advance and the sole owner of XL Hog.  For this reason, the disclosure of information about the value of Advance or the value of XL Hog is tantamount to the disclosure of information bearing directly on Mr. Nolin's net worth.  Mr. Nolin has always considered this information private, he has always treated it as private, and he has always expected it to be treated as private.  *See* Nolin Decl. ¶ 10.

By their motion, plaintiffs also seek to remove the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation from **documents reflecting payments made to Mr. Nolin or on his behalf**, including documents showing dividend distributions and bonus compensation, earnings statements, invoices for a car leased for Mr. Nolin by Advance, invoices for Mr. Nolin's health

insurance, schedules of year end bonus withholding, and schedules of officer's expense.  This information bears directly on Mr. Nolin's compensation.  Mr. Nolin has always considered this information private, he has always treated it as private, and he has always expected it to be treated as private.  *See* Nolin Decl. ¶ 11.

Unlike in most if not all of the cases relied on by plaintiffs, XL Hog and Mr. Nolin are not seeking to block the discovery of this information and plaintiffs are not seeking to compel its disclosure.  The ***information has already been disclosed***, subject to the protective order.  In many of the cases relied on by plaintiffs which involve motions to compel, courts applied balancing tests and determined that the information should be disclosed, subject to suitable protections.  *See, e.g., Oakes*, 179 F.R.D. at 284-285.  This is precisely the course that XL Hog and Mr. Nolin have already taken here.  Plaintiffs have made no showing that there is a compelling need for any broader disclosure than has already been made.

## III.  <u>CONCLUSION.</u>

Though plaintiffs acknowledge that the Court must conduct a balancing test in order to grant plaintiffs the relief they seek, plaintiffs have made no showing that they – including Mr. Smith, an agent of XL Hogs largest and most aggressive competitor – have any need to see the documents at issue.  By contrast, under the terms of the protective order, the ***only*** means available to Mr. Nolin and XL Hog to prevent disclosure of their trade secrets to XL Hog's competitor is to maintiain the current designations of the documents.  For the foregoing reasons, plaintiffs' motion should be denied.

Dated:  September 16, 2009          BROWNE WOODS GEORGE LLP

By  /S/ - Peter W. Ross
_____
Peter W. Ross

Attorneys for Defendants
FORREST I. NOLIN and XL HOG, INC.